**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-18-0000381**
**10-MAY-2019**
**07:55 AM**

NO. CAAP-18-0000381

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellant,
v.
DAWN NAEOLE, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 16-1-1997)

MEMORANDUM OPINION
(By:  Fujise, Presiding Judge, Chan and Hiraoka, JJ.)

Plaintiff-Appellant State of Hawai'i (**State**) appeals from the Findings of Fact and Conclusions of Law, and Order Denying in Part, and Granting in Part, Defendant's Motion to Suppress Evidence (**Order**) entered by the Circuit Court of the First Circuit (**Circuit Court**)[1] on April 5, 2018.  For the reasons explained below, we vacate the Order and remand this case for further proceedings.

**I.**

At 6:12 a.m. on Friday, September 4, 2015, officers of the Honolulu Police Department (**HPD**) executed a search warrant at the residence of Defendant-Appellee Dawn Naeole (**Naeole**) and recovered physical evidence.  On December 27, 2016, Naeole was charged by a five-count grand jury indictment with Promoting a Dangerous Drug (methamphetamine) in the First Degree, Promoting a Harmful Drug (Tramadol and Lorazepam) in the Second Degree (two

---

[1]    The Honorable Rom A. Trader presided.

counts), Promoting a Detrimental Drug (marijuana) in the Third Degree, and Unlawful Use of Drug Paraphernalia.

On June 28, 2017, Naeole filed a motion to suppress all evidence seized pursuant to the search warrant. She argued, among other things, that HPD's execution of the search warrant violated Hawaii Revised Statutes (**HRS**) § 803-37[2] and article I, section 7 of the Hawai'i Constitution[3] because HPD officers forcibly entered her residence without affording her a reasonable time to respond to the demand for entry. The Circuit Court conducted evidentiary hearings on January 16, 2018, and March 6, 2018. At the conclusion of the second hearing the Circuit Court announced its decision to grant the motion, stating: "I cannot say that under the facts here that that is a reasonable amount of time to allow the occupants to respond." The Order was entered on April 5, 2018. This appeal followed.

## II.

The State challenges the Circuit Court's conclusions of law (**COL**) nos. 21, 24, and 25. The Circuit Court concluded:

> 21.    In the present case, the "knock and announce" procedure employed by the Honolulu Police Department violated [Naeole]'s rights from [sic] unreasonable search and seizure under Article [sic] 1, Section [sic] 7 of the Hawaii [Hawai'i] State Constitution because the Honolulu Police Department failed to afford [Naeole] a reasonable amount of time

---

[2]    HRS § 803-37 (2014) provides, in relevant part:

> The officer charged with the warrant, if a house, store, or other building is designated as the place to be searched, may enter it without demanding permission if the officer finds it open. If the doors are shut the officer must declare the officer's office and the officer's business, and demand entrance. If the doors, gates, or other bars to the entrance are not immediately opened, the officer may break them. When entered, the officer may demand that any other part of the house, or any closet, or other closed place in which the officer has reason to believe the property is concealed, may be opened for the officer's inspection, and if refused the officer may break them.

[3]    Haw. Const. art. I, § 7 states, in relevant part:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated[.]

to respond to their demand for entry to serve [the search warrant] and, accordingly grants Defendant's Motion to Suppress on this ground only.

. . . .

24.     Further, there was no evidence that the occupants were aware of the police presence and were taking steps to destroy any evidence, that would [have] justified breaching the door based on exigent circumstances.

25.     A violation of [Naeole]'s right from [sic] an unreasonable search and seizure under Article [sic] 1, Section [sic] 7 of the Hawaii [Hawaiʻi] State Constitution in the execution of [the search warrant] renders the entry illegal and requires suppression of all evidence seized.

Questions of constitutional law are reviewed under the right/wrong standard based on the facts of the case. State v. Tetu, 139 Hawaiʻi 207, 214, 386 P.3d 844, 851 (2016) (citations omitted).

The State has not challenged any of the Circuit Court's findings of fact (FOF), which establish that the search warrant was executed at approximately 6:12 a.m. on September 4, 2015. The Circuit Court found:

9.     . . . ~~Zachary~~ Zachariah Wentling (hereafter "Wentling") was called by [Naeole] and testified to the following:

a.     That he and his family lives [sic] . . . right next door to [Naeole]'s residence[;]

b.     That on the morning of September 4, 2015 at about 0612 hours, he was at his residence when he heard dogs barking;

c.     That he looked out of the front door, and observed officers of the Honolulu Police Department opening [Naeole's] front yard gate[;]

d.     That he quickly went back into his residence and to his room to grab his cellular phone to video record the event which took no more than a minute;

e.     That when he returned to the front door, he observed the officers banging the door down and announcing their presence; and[ ]

f.     That his video recording of the event that was admitted into evidence was a true and correct copy of the video he had recorded.

(name correction in original).

The Circuit Court also found:

> 10.   . . . HPD Officer Stephen Roe was called by the State and testified to the following:
>
> . . . .
>
> c.   That on September 4, ~~2017~~ 2015, he was a member of an eight-person entry team tasked with the execution of [the search warrant];
>
> d.   That he conducted the knock and announce procedure by verbally stating in [a] clear and loud voice, "Police, we have a search warrant, open the door now";
>
> e.   That he did the knock-and-announce procedure four times; [and]
>
> f.   Demonstrating exactly what he did on the morning of September 4, 2015, he conducted the knock and announce procedure for a sum total of about twenty-five (25) seconds, with no discernable pause between each of the four knock-and-announce procedures[.]
>
> . . . .
>
> 11.   . . . [Naeole] testified to the following:
>
> a.   That she was awake in her residence and in the hallway some twenty-five (25) feet away from the front door; and[ ]
>
> b.   That she heard loud banging and before she could get to the door, the officers were already inside the residence.

(year correction in original).

The State contends that twenty-five seconds from the start of the first knock until the forced entry was a reasonable time span, citing State v. Diaz, 100 Hawai'i 210, 58 P.3d 1257 (2002) for the proposition that waiting fifteen seconds before effecting a forcible entry was a reasonable time. Diaz is distinguishable on its facts. In Diaz, police executed a search warrant at a video store at 6:45 p.m., while the store was open to the public. The police entered the store unannounced, and went to a locked interior office door. An officer knocked three times, stating "police department, search warrant." After waiting fifteen seconds, the door was kicked in. Diaz was inside, holding an envelope containing drugs. The supreme court stated that "expecting the occupant of the interior office to be alert and responsive during business hours is reasonable."

Id. at 221, 58 P.3d at 1268. Under those facts, the supreme court held that fifteen seconds was a reasonable time to wait before forcibly entering the interior office. Id.

In State v. Garcia, 77 Hawai'i 461, 887 P.2d 671 (App. 1995), the police executed a search warrant at Garcia's apartment at 7:07 p.m. An officer knocked on the front door and announced, "Police, search warrant." Id. at 464, 887 P.2d at 674. The officer "could hear voices inside the apartment, which he believed to be persons inside talking, or voices from a television set. No one responded to his knock and announce." Id. (alterations omitted). After approximately ten seconds, the police forcibly entered the apartment. We held that "under HRS § 803-37, occupants of the premises to be searched must be given a reasonable time to respond to the police's demand for entry to serve a search warrant." Id. at 468, 887 P.2d at 678. What constitutes "a reasonable period of time to respond to a knock and announcement must be determined by the circumstances of each case." Id. (citations omitted). Under the circumstances in Garcia we held: "Whatever portion, if any, of the ten seconds that the police allowed to elapse before they broke through two doors was clearly insufficient to afford the occupants a reasonable opportunity to open the doors." Id. at 469, 887 P.2d at 679. We distinguished State v. Davenport, 55 Haw. 90, 516 P.2d 65 (1973), in which the police waited for thirty seconds and forcibly entered the defendant's residence after an "officer heard sounds of 'running' within" the residence, and State v. Lloyd, 61 Haw. 505, 606 P.2d 913 (1980), in which the knock and announcement was "immediately followed by a scurrying about within the house and then a crashing sound toward the rear of the building[,]" as presenting exigent circumstances justifying the forced entry. Garcia, 77 Hawai'i at 469, 887 P.2d at 679 (original brackets and internal quotation marks omitted).

In State v. Monay, 85 Hawai'i 282, 943 P.2d 908 (1997), the police executed a search warrant at Monay's apartment at 11:05 a.m. An officer knocked on the door and announced "police, search warrant." The officer heard no suspicious sound or

movement inside the apartment. Within two seconds of the announcement, the officer opened the unlocked door and entered the apartment. The supreme court held that under those facts, "two seconds was patently unreasonable because no exigent circumstances existed." Id. at 284, 943 P.2d at 910. In order to establish exigent circumstances justifying a forced entry, "the prosecution must show that 'the occupants of the suspected locale [were] aware of the police presence and [were] taking steps which the police realistically fear[ed] may lead to the destruction of evidence.'" Id. at 284-85, 943 P.2d at 910-11 (quoting Davenport, 55 Haw. at 99, 516 P.2d at 72) (alterations in original) (additional citation omitted).

The Hawai'i case law is clear that the amount of time between the police announcing their presence and a forced entry — be it two, ten, fifteen, twenty-five, or thirty seconds — is only one of the factors to be considered in a case like this. What constitutes "a reasonable period of time to respond to a knock and announcement must be determined by the circumstances of each case." Garcia, 77 Hawai'i at 468, 887 P.2d at 678 (citation omitted). In this case, although the search warrant was executed at 6:12 a.m., it was a Friday.[4] Naeole testified she was awake and in her hallway, on her way to the bathroom. The house in which she was living was relatively small, as shown in State's exhibits 2 and 3. Even before HPD knocked on her front door and demanded entry, her next-door neighbor's dogs began barking when the officers were trying to open the gate on the chain link fence surrounding Naeole's yard. Enough time had passed to allow Wentling (Naeole's next-door neighbor) to go from his room to his front door, go outside, see the police, hear the police "wrestling with [Naeole's] front gate," go back to his room on the other side of his house to get his cell phone, go back to his front door, and begin recording the scene on his phone. Officer Roe testified that he knocked on Naeole's front door and

---

[4]     We take judicial notice that September 4, 2015 was a Friday. Hawaii Rules of Evidence (**HRE**) Rule 201 (2016).

announced HPD's presence four times. He received no response the first two times. After the third time:

> A. I heard a female voice in the residence. I couldn't tell what she was saying, but it seemed like she was directed -- or talking to us.
>
> Q. But you were unable to make out the words?
>
> A. No, I wasn't.
>
> Q. What happened after initiating that third knock-and-announce and then hearing that female voice? What did you do?
>
> A. I initiated another one, a fourth knock-and-announce, which is usually not -- we usually don't. The breaching team will usually actually make entry after the third if there's no response. But we were trying to give her an opportunity, the female voice, to come to the door and open the door.
>
> Q. Did you receive a response from within the residence after the fourth procedure?
>
> A. No, sir.
>
> . . . .
>
> Q. And after that fourth procedure, did the entry team breach the front door?
>
> A. Yes, sir.

Under the circumstances of this case, we hold that Naeole was afforded a reasonable amount of time to respond to HPD's demand for entry to serve the search warrant. The Circuit Court should have denied Naeole's motion to suppress evidence.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## III.

Based upon the foregoing, the Findings of Fact and Conclusions of Law, and Order Denying in Part, and Granting in Part, Defendant's Motion to Suppress Evidence, entered by the Circuit Court of the First Circuit on April 5, 2018, is vacated and this case is remanded to the Circuit Court for further proceedings.

DATED: Honolulu, Hawai'i, May 10, 2019.

On the briefs:

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellant.

Phyllis J. Hironaka,
Deputy Public Defender,
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge